UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NASA MACHINE TOOLS INC., | Civil Action No. 18-2872 (MCA) (MAH) |
| Plaintiffs, | |
| v. | OPINION |
| FAMA TECHNOLOGY INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Nasa Machine Tools Inc.'s ("Nasa") Motion for Leave to File a Second Amended Complaint. D.E. 102. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decides this motion without oral argument. For the reasons set forth below, the Court will grant Nasa's motion.

## II. BACKGROUND[1]

Nasa manufactures computer numerical control machines (CNCs). First Am. Compl., D.E. 50, Oct. 31, 2018, ¶ 7. From approximately 2011 to 2017, Nasa had an agreement with FAMA Technology Inc. ("FAMA") and Farzad Ahmadpour ("Ahmadpour"), the owner of FAMA, to service the CNCs that Nasa sold to customers. *Id.* at ¶ 9. This relationship, Nasa alleges, afforded FAMA access to Nasa's proprietary information and trade secrets. *Id.* at ¶ 10. Sometime in mid-2016, Nasa engaged FAMA to help design and install a probing system, called

---

[1] Because the Court writes for the parties, the Court briefly summarizes the pertinent facts. The Court also assumes as true the factual allegations in the complaint for the purpose of this motion. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992).

the "Vision System," for Nasa's CNCs for delivery to Customer 1. *Id.* at ¶¶ 13-15. Nasa contends that the parties orally agreed that FAMA would assign the software rights to Nasa, and that Nasa would pay FAMA $22,100 for the installment of the Vision System on each CNC. *Id.* Nasa claims that for the period of approximately July 2016 to September 2017, the Vision System was installed on eight CNCs that Nasa sold to Customer 1, for which Nasa paid FAMA $184,300. *Id.* at ¶ 15.

According to Nasa, in late 2017, Ahmadpour notified NASA that FAMA would no longer conduct business with Nasa, and that Ahmadpour and FAMA would market and sell their own CNCs with the Vision System. *Id.* at ¶ 18. Nasa alleges that in or around January 2017, Defendants formed ProCut Technologies, LLC ("ProCut") to manufacture and sell CNCs and began selling CNCs to at least one of Nasa's customers. *Id.* at ¶ 17. Nasa also alleges that Defendants attempted to advertise or market ProCut's CNCs to Customer 1, made derogatory statements about Nasa's quality, and caused Nasa to lose potential sales to existing customers, including Customer 1. *Id.* at ¶¶ 20-22. Further, Nasa complains that Defendants have refused to provide the Vision System software to Nasa, thereby preventing Nasa from marketing or selling the Vision System. *Id.* at ¶ 19. Instead, Nasa alleges, ProCut now markets the Vision System software as its own. *Id.* at ¶ 22.

On January 23, 2018, Nasa filed the Complaint in the instant action against Defendants, claiming breach of an oral contract, tortious interference with existing and prospective contractual or economic relationships, unfair trade practices, misappropriation of confidential information, misappropriation of trade secrets, fraudulent misrepresentation, unjust enrichment, and punitive damages. Compl., Jan. 23, 2018, D.E. 1. Defendants removed the action to this Court on February 28, 2018. D.E. 1. Defendants moved to dismiss Nasa's Complaint, which

District Judge Madeline Cox Arleo denied on October 22, 2018. D.E. 49. Judge Arleo, however, directed Nasa to re-plead its counts for breach of contract and fraudulent misrepresentation with the requisite specificity, and on October 31, 2018, Nasa filed its First Amended Complaint. First Am. Compl, D.E. 50, Oct. 31, 2018.

Nasa now moves for leave to file a Second Amended Complaint to: (1) re-define the "Vision System," changing the definition from a software-only system to a combined software and hardware system; (2) add additional allegations in support of Nasa's claims; (3) add a claim for trade libel; and (4) add a claim for defamation. Defendants argue that the Court should deny Nasa's motion to amend because the amendment is the result of undue delay and bad faith, and permitting the amendment would cause Defendants to suffer undue prejudice. With respect to the defamation claim, Defendants maintain that the amendment would be futile as it is brought beyond the one-year statute of limitations.

## III. ANALYSIS

The first issue for the Court is whether Federal Rule of Civil Procedure 15 or 16 governs Plaintiff's motion to amend. *Karlo v. Pittsburgh Glass Works, LLC*, Civ. No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo,* 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).

There is a recognized tension between Rule 15 and Rule 16 that has not been directly resolved by the United States Court of Appeals for the Third Circuit. *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d. Cir. 2010); *Graham v. Progressive*

*Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010). However, courts "within the Third Circuit have consistently reached the same conclusion: a party seeking to amend the pleadings *after the deadline set by the Court* must satisfy the requirements of Rule 16(b)(4)—i.e., they must show 'good cause.'" *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)) (emphasis added).

Here, Nasa filed its pleading after the deadline set by this Court, and, therefore, the Court must consider Rule 16. The operative Order instructed that any motion to amend the pleadings be filed by February 25, 2019. Pretrial Scheduling Order, Nov. 20, 2018, D.E. 59. Nasa filed the instant motion on September 13, 2019. Motion for Leave to File Plaintiff's Second Am. Compl., Sept. 13, 2019, D.E. 102. Because Nasa filed the present motion nearly seven months after the February 25, 2019 filing deadline, the Court must first determine whether, under Rule 16, good cause exists to adjust the deadline to permit Nasa to file its motion. If there is good cause to amend, the Court will then turn to Rule 15 to determine whether to permit Nasa to file its amended pleading as justice so requires. *Home Semiconductor Corp. v. Samsung Electronics Co., Ltd.*, Civ. No. 13-2033, 2019 WL 2135858, at *2 (D. Del. 2019) (stating, "only after having found the requisite showing of good cause will the court consider whether the proposed amendment pleading meets the 15(a) standard.").

### A. Rule 16(b)(4)

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.*, 918 F.2d

4

1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison*, 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000).

The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and, accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos*, Civ. No. 09–5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010)); *see also Race Tires*, 614 F.3d at 84 (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence"). Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, Civ. No. 03–2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent–A–Ctr. v. Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp.

2d 695, 702 (E.D. Pa. 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of Stallings v. IBM Corp.*, Civ. No. 08–3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark*, Civ. No. 10–1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Communs., Inc. v. OZ Optics, Ltd.*, 148 Fed. App'x. 82, 85 (3d Cir. 2005) (upholding trial court's finding that the movant could not show "good cause" because they were in possession of the facts underlying the proposed counterclaim well before the deadline for amendment).

Nasa argues that it has good cause for seeking to amend after the expiration of the deadline. Nasa maintains that it did not learn about the January 23, 2018 and January 19, 2018 e-mails, which form the basis of the instant amendments, until April 11, 2019. Specifically, Nasa contends that on April 11, 2019, Defendants produced third-party discovery in response to Defendants' subpoena, including: (1) a January 23, 2018 e-mail, in which Nasa claims

6

Defendants make defamatory statements about Nasa to Customer 1;[2] and (2) an e-mail exchange between Defendants' counsel, Neil A. Benchell, Esq., and Customer 1 dated January 16 and January 19, 2018.[3] Nasa contends that had these emails been produced in any of Defendants' prior productions on January 4, 2019, January 30, 2019, and February 20, 2019, Nasa would have been able to move to amend by the Court's deadline for doing so. Nasa argues that it further delayed in moving to amend because discovery was stayed from April 15, 2019 to July

---

[2] As alleged in the proposed amended pleading,

> In the January 23 Email, Defendant Ahmadpour states, among other things, that: (i) Plaintiff is "incapable of making good machines;" (ii) Plaintiff "cannot even service their own products;" (iii) it took Defendant Ahmadpour "almost 5 years to convince Plaintiff to make AC machines;" (iv) Plaintiff lacks knowledge and are "scared of any changes or improvements;" (v) "there are some inherent problems" with Plaintiff's machines; and (vi) Plaintiff's machines are "inferior."

Prop. Second Am. Compl., ¶ 29, D.E. 102-3. *See* Decl. of John Choi ("Choi Decl."), Ex. 6, D.E. 102-3 (January 23, 2018 e-mail from Farzad Ahmadpour to Mike Mills).

[3] In a January 16, 2017, e-mail from Mr. Benchell to Scott Seewald, Senior Counsel at Arconic Inc., senior counsel for Customer 1, Mr. Benchell wrote in part:

> Recently, Howmet employees have refused to respond to FAMA's communications, indicating at least in case that there were legal issues precluding Howmet from working with FAMA. However, we are unaware of any legal issues involving FAMA which would prevent it from continuing its ongoing relationship with Howmet. . . . I look forward to hearing what you find, and how we can assist in resolving any outstanding legal issue.

On January 19, 2019, Mr. Seewald responded in part:

> I shared your request with my business colleagues and it appears there is no legal issue. Rather, Howmet does not have any business need for FAMA's services at this time. My understanding is that there is not currently and has never been a contractual relationship between Howmet and FAMA and any part interaction between FAMA and Howmet was through FAMA's role as a subcontractor to one of Howmet's suppliers.

Choi Decl., Ex. 5, D.E. 102-3.

7

11, 2019, shortly after Nasa obtained these emails, so that the parties could focus on settlement. However, Nasa raised its intention to amend in both its June 21, 2019 settlement letter to the Court and in the parties' July 10, 2019 status report to the Court. Given that Nasa did not know of the existence of the pertinent emails until April 11, 2019, only four days before the Court stayed discovery, and that Nasa raised its intention to amend to the Court in June and again in July, as soon as the stay was lifted, the Court finds that Nasa has demonstrated good cause pursuant to Rule 16 to modify the February 25, 2019 deadline for filing any motion to amend the pleadings.[4]

### B. Rule 15

Having determined that Nasa has demonstrated good cause to amend under Rule 16, the Court must now address whether Nasa has satisfied Rule 15. *Home Semiconductor,* Civ. No. 13-2033, 2019 WL 2135858, at *2. Under Rule 15 of the Federal Rules of Civil Procedure, a plaintiff may amend his or her complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). Further, "leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile." *Free Speech Coalition, Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012). The Court may deny leave to amend the pleadings only when there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure

---

[4] The Court notes that Defendants do not raise any specific arguments with respect to whether Nasa has shown good cause for modifying the deadline by which a motion to amend may be filed. Instead, Defendants generally argue that Nasa has unduly delayed in seeking to amend its pleading. The Court will discuss this argument, infra, under the Rule 15 analysis.

8

deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Defendants argue that Nasa has unduly delayed in seeking to amend its pleading and that permitting the amendment at this late juncture, near the end of fact discovery, will cause Defendants prejudice. Defendants also contend that Nasa's proposed amendment to add allegations concerning Defendants' counsel is brought in bad faith and solely for purposes of harassment. Finally, Defendants maintain that Nasa's defamation claim is futile because it is barred by a one-year statute of limitations. The Court will take each argument in turn.

### 1. Undue Delay

While delay alone is insufficient to justify denial of leave to amend, "at some point, ... delay will become 'undue,' placing an unwarranted burden on the court ... [and] an unfair burden on the opposing party." *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied. *Id.* "[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "Indeed, amendments may be made during trial, after the close of testimony, or even after judgment." *Ajax Enterprises v. Fay*, Civ. No. 04-4539, 2007 WL 766335, *2 (D.N.J. Mar. 7, 2007) (citing Wright, Miller & Kane, Federal Practice and Procedure Civil 2d § 1494, at 51–52). "Leave to amend a complaint should only be denied because of undue delay if the delay causes the non-moving party to be prejudiced." *Cincerella v. Egg Harbor Tp. Police Dept.*, Civ. No. 06-1183, 2007 WL 2682965, at *2 (D.N.J. Sept. 6, 2007).

Defendants argue that the Court should deny Nasa's motion to amend because Nasa waited until two months before the close of discovery to move to amend its pleading, and

9

because Nasa has known since December 2018 that Defendants objected to Nasa's definition of the Vision System. Defendants also maintain that the addition of the trade libel claim is a product of undue delay and if Nasa had moved to amend sooner discovery would be completed in a timely manner. These arguments fail. There is nothing in the facts before this Court which indicates that Nasa's failure to amend the Complaint earlier in the litigation is the product of "undue delay."

The Court does not find evidence of undue delay for several reasons. First, as set forth earlier, Nasa did not receive the January 2018 e-mails underpinning at least some of the proposed amendments until April 2019, when a third-party produced them. Further, the parties attempted to settle the case between April and July 2019. Nasa's restraint in moving to amend during the settlement efforts hardly strikes the Court as unreasonable. And during that process, Nasa made clear its intention to move to amend if necessary. Finally, Nasa's proposed amendment concerning the definition of the Vision System actually brings the definition in line with Defendants' understanding of that definition from the outset of this litigation. Accordingly, the Court cannot find Nasa's amendment at this time is the product of undue delay.

2. **Prejudice to Defendants**

While the question of undue delay and bad faith focuses on a plaintiff's motive for not amending earlier, the issue of prejudice focuses on the effect on the defendant. *Adams*, 739 F.2d at 868. In deciding whether the proposed amendment would unfairly prejudice a defendant, courts consider whether permitting the amendment would (1) require defendant to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). The factors have been

interpreted to mean that "'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

The Court is not persuaded by Defendants' argument that they will be prejudiced if Nasa is permitted to amend. Although Defendants argue that permitting the amendments will result in discovery being extended, add expense, and delay the final adjudication of the merits of Nasa's claims against them, mere inconvenience in defending a suit does not constitute undue prejudice. *See Harrison Beverage*, 133 F.R.D. at 468. It is also unclear exactly what additional discovery the amendments will require, since the underlying allegations and attendant discovery have been known to the parties for months. For example, Defendants have been aware of the January 19, 2018 and January 23, 2018 e-mails since at least April 11, 2019, when they received the e-mails from the third party and produced them to Nasa. Discovery on these and related issues have been proceeding since that time, save during the stay. To be sure, the Court recently resolved discovery disputes between the parties, largely in Nasa's favor, on these very e-mails.

Additionally, the Court is not persuaded that Defendants will suffer any prejudice by permitting Nasa to amend its definition of Vision System because as Defendants concede, Nasa is now accepting Defendants' definition. Moreover, Nasa has represented that it will not amend the definition of Vision System in its discovery requests. And to be clear, the Court does not require Defendants to supplement or re-answer written discovery requests based on the amended definition. Accordingly, written discovery on this issue appears to be complete. *See* Reply, Sept. 30, 2019, D.E. 108, at 3. Moreover, any prejudice Defendants might suffer by Nasa's amendment at this time can be cured by an extension of the deadline to complete discovery.

### 3. Bad Faith

Whether a party has acted in bad faith in moving to amend the pleadings focuses on the movant's motives for not amending the pleading earlier in the litigation. *Adams*, 739 F.2d at 868. "[T]here generally must... be some extrinsic evidence to indicate that a litigant acted in bad faith before a motion to amend will be denied on this ground." *See Diallo v. ALO Enters. Corp.*, Civ. No. 12-3762, 2013 WL 3772827, at *3 (D.N.J. July 17, 2013) (citations omitted).

Measured against the high standard to find bad faith, Defendants' arguments plainly fail. Defendants argue that in seeking to amend the complaint to add the January 19, 2018 email from Mr. Benchell, *supra* note 3, Plaintiff is acting in bad faith. But a review of the amended pleading does not, as Defendants seem to suggest, allege that Defense counsel sold Defendants' services in the January 19, 2018 e-mail. See also Reply Brief, D.E. 108, at 7-8 ("Nowhere in the proposed amendments does Plaintiff say that the January 19 Email shows that 'Defendants' counsel was selling Defendants' service.'") (quoting Def. Opp'n Brf. at 7).

Moreover, Defendants offer no extrinsic evidence of bad faith. They attempt to import various discovery disputes that have arisen between the parties over the course of this litigation. And while there have been numerous such disputes, over which this Court has presided and frequently resolved, nothing about those disputes suggests bad faith. Accordingly, the Court declines to find that Nasa's motion to amend was made in bad faith.

### 4. Futility

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage*, 133 F.R.D. at 468 (citations omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*,

114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Harrison Beverage*, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted)).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Fowler*, 578 F.3d at 211. As the Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Although the plausibility standard is not a "probability requirement," the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79 (citations omitted) (internal

13

quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### a. Relation Back

Defendants argue that Nasa's amendment to add a claim for defamation is futile because it is barred by the one-year statute of limitations for defamation. Nasa maintains that its amendment is timely because it relates back to the filing of the original Complaint.

A proposed amended claim relates back to the date of the original Complaint when the new claim arises out of the same "conduct, transaction or occurrence" as the original claim and are against the same parties. *See* N.J. Ct. R. 4:9-3; Fed. R. Civ. P. 15(c)(1)(B). The Court finds that Nasa's amendment is not futile as Nasa provides sufficient facts to demonstrate that the defamation claim relates back to the original Complaint.

The original complaint filed on January 23, 2018 alleged the following:

> 20. Upon information and belief, instead, Defendant Ahmadpour, on behalf of and as co-owner of Defendant Procut, independently solicited Plaintiff's customers, including Customer 1, in an effort to sell Procut CNCs and the Software.
>
> 32. Nevertheless, Defendants intentionally and improperly interfered with Plaintiff's contractual relation by preventing Plaintiff and Customer 1 from accessing Software and instead, soliciting Customer 1 to purchase Procut CNCs, thereby preventing full performance of Plaintiff's contractual obligations.

Compl., Feb. 28, 2018, D.E. 1. Nasa's claim for defamation clearly arises out of the same "conduct, transaction or occurrence" as the original claims. The defamation claim derives from Ahmadpour's January 23, 2018 email to Customer 1, which stated in pertinent part that: (1) "Nasa is incapable of making good machines and cannot even service their own products[;]" (2) "Due to their lack of knowledge they are scared of any changes or improvements[;]" (3) "I spent a huge amount of time developing their new AC machines and constantly helping them to get the

14

best performance on the machine, but unfortunately there are some inherent problems that I just did not want my name to be attached to their inferior machines." Choi Decl., Ex. 6, D.E. 102-3. Mr. Ahmadpour concluded the e-mail by asking Customer 1 to "let me know if you are still interested to improve your vision systems and if I can offer any help in the future." *Id.* The defamation claim therefore arose out of the same series of events that form the basis of events plead in paragraphs 20 and 32, specifically, Defendants' alleged efforts to replace Nasa with themselves as Customer 1's supplier. Therefore, it "constitutes the same matter more fully or differently laid" and "the gist of the action or basic subject of the controversy remains the same." *Fable v. Doros,* Dkt. No. A-2576-17T4, 2018 WL 6816385, *2 (N.J. Super. Ct. App. Div. Dec. 28, 2018) (internal citation omitted). Accordingly, the Court finds that Nasa's proposed claims relate back to the original Complaint.

Having determined that Nasa's defamation claim relates back to the filing of the original Complaint, the Court will now turn to determining whether Nasa adequately pleads the elements of both defamation and trade libel claims.

### b. Defamation and Trade Libel

To show defamation under New Jersey law, Plaintiff must demonstrate that Defendants (1) made a false and defamatory statement about Plaintiff, (2) which they communicated to a third party, and (3) had a requisite degree of fault. *Reed v. Scheffler*, 218 F. Supp. 3d 275, 281–82 (D.N.J. 2016). A claim for trade libel requires Plaintiff to show (1) that Defendants published; (2) with malice; (3) false allegations with respect to Plaintiff's business or product; and special damages. *Wolfe v. Gooding & Company, Inc.*, Civ. No. 14-4728, 2017 WL 3977920, at *2 (D.N.J. Sept. 11, 2017).

Here, Nasa asserts that Mr. Ahmadpour's statements in the January 23, 2018 email are actionable under the torts of defamation and trade libel. Nasa alleges in Count Eleven of its proposed amended pleading, for defamation, that Mr. Ahmadpour made false and defamatory statements about Nasa in his January 23, 2018 email to Customer 1, which he knew to be false. Prop. Am. Compl., ¶¶ 114-121. In Count Ten, for trade libel, Nasa alleges that Mr. Ahmadpour made the false and defamatory statements with malice because they were competitors and after two months of unsuccessfully attempting to sell its products to Customer 1, Defendants sought to stop Customer 1 from dealing with Nasa and to begin dealing with Defendants instead. Nasa asserts that Mr. Ahmadpour sent the January 23, 2018 email to Customer 1 despite Customer 1's January 19, 2018 email to Defendants' attorney that any past interaction between Customer 1 and FAMA was solely through FAMA's role as subcontractor for one of Customer 1's suppliers. Nasa also alleges that as a result of the email, Nasa lost anticipated orders from Customer 1 and generally suffered a diminution in business. *Id.* at ¶¶ 96-113. The Court finds that Nasa adequately alleges facts sufficient to support claims for both defamation and trade libel; therefore, permitting the amendment would not be futile.[5]

---

[5] Despite Defendants' contention to the contrary, a single email can constitute both a claim for defamation and a claim for trade libel. *See Dairy Stores, Inc. v. Sentinel Publishing Co., Inc.*, 104 N.J. 125, 133-34 (1986). In a case such as this, where Nasa claims that Defendants' statement harmed both Nasa's reputation and interfered with its contractual relations with Customer 1, one statement may indeed form the basis for both claims. Accordingly, the Court finds that permitting the amendment would not be futile.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Nasa's Motion for Leave to File a Second Amended Complaint. An Order accompanies this Opinion.

*s/ Michael A. Hammer*_____
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

**Dated: December 27, 2019**